IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION



| | | |
|---|---|---|
| DEBRA WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:21-CV-007-Z |
| | § | |
| CITY OF CHILDRESS, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's Motion to Dismiss (ECF No. 7) and Plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 14). Having considered the pleadings and applicable law, the Court **GRANTS** and **DENIES IN PART** Defendant's Motion to Dismiss. The Court also **GRANTS** and **DENIES IN PART** Plaintiff's Motion for Leave to File an Amended Complaint.

**BACKGROUND**

Plaintiff Debra Williams is a former employee of Defendant City of Childress. Plaintiff's Complaint alleges violations under the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA") for retaliation, the Employee Retirement Income Security Act of 1974 ("ERISA"), the Texas Whistleblower Act ("TWA"), the Family and Medical Leave Act of 1993 ("FMLA"), and 42 U.S.C. § 1983. ECF No. 1 at 5–9. Defendant now moves to dismiss the present lawsuit in its entirety. ECF No. 7. Plaintiff asks the court to alternatively grant her leave to file an amended Complaint. ECF No. 14.

### A. Plaintiff's health problems

At this stage, the Court takes Plaintiff's plausible allegations as true. Plaintiff was a utility billing clerk for the City of Childress from December 3, 2008 to May 8, 2020. ECF No. 1 at ¶ 8, 10 ("Comp."). During her employment, Plaintiff was diagnosed with internal fibrosis, major depressive disorder, interstitial lung disease, rheumatoid arthritis, COPD, lupus, and congestive heart failure. Comp. ¶ 13. She regularly visited her doctor for her health conditions and took prescription medication, all covered in part by her health insurance provided by Defendant. *Id.* ¶ 12.

Defendant's City Manager, Kevin Hodges ("Hodges") was aware of Plaintiff's health conditions. *Id.* ¶ 14. Plaintiff requested accommodations to manage her health limitations but never identifies what accommodations were requested and whether they were denied. *Id.* ¶ 25, 26.

In March 2020, Plaintiff's doctor ordered her not to work from the worksite and Defendant released her with permission because of the onset of the COVID-19 pandemic. *Id.* ¶ 35. Plaintiff's husband and daughter then contacted Defendant to request Plaintiff be put on FMLA-leave. *Id.* ¶ 37. On April 7, 2020, Plaintiff received a letter from the City Attorney regarding Plaintiff's FMLA leave request and stating that she would be paid from March 19, 2020 to April 2, 2020 from the Families First Coronavirus Response Act emergency paid sick leave time and afterwards she would need to take leave under the FMLA using sick leave, vacation time, or accrued compensatory time. *Id.* ¶ 38.

On April 14, 2020, Plaintiff's doctor allegedly certified that Plaintiff's condition made her unable to perform her job functions from March 16, 2020 until about June 1, 2020 and that she was prescribed medicine and needed treatment twice a year. *Id.* ¶ 39. Plaintiff alleges she believed that she was away from work on FMLA-leave with Defendant's permission. *Id.* ¶ 40-42.

### B. Plaintiff's complaints about workplace practices

Unrelated to her health, Plaintiff commonly reported, objected, and made complaints about alleged issues occurring within the workplace. *Id.* ¶ 20-24. First, Plaintiff reported her coworkers to Hodges for reporting being at work when they were not actually at work and for conducting personal tasks, such as writing personal resumés during their work hours. *Id.* ¶ 20-21. Plaintiff also objected when instructed to not shut off a customer's water when their bill was overdue because the customer was the relative of a City Councilmember. *Id.* ¶ 23. Plaintiff alleges she knew of a nepotism problem among manager and councilmembers of the city, but she does not allege she complained about that practice. *Id.* ¶ 22. Lastly, Plaintiff "made multiple complaints to Defendant's employees including the City Manager and Mayor Cary Preston including complaints about disparate treatment, misuse of funds, and her work conditions." *Id.* ¶ 24.

After this series of complaints, Plaintiff alleges she began experiencing a more hostile work environment in May of 2019, including being yelled at and berated by Hodges, and an increased workload following these complaints. *Id.* ¶ 27, 29. She alleges requests for time off to attend doctor appointments were scrutinized, unlike her coworkers' similar requests. *Id.* ¶ 28. Plaintiff never alleges that she was denied time off to attend these appointments.

On August 21, 2019, Plaintiff filed a charge of discrimination with the EEOC and Texas Workforce Commission ("EEOC Complaint I"). *Id.* ¶ 30; ECF No. 8-1 at 2-3. EEOC Complaint I alleged Defendant discriminated against her in violation of Title I of the ADA and the ADEA and retaliated against her in violation of Title VII of the Civil Rights Act of 1964. ECF No. 8-1 at 3. In January 2020, Plaintiff received two written warnings, which Plaintiff disputed, dated January 21, 2020 and January 23, 2020, for violating work rules. Comp. ¶ 33.

3

### C. Incident with coworker

At some point in 2019,[1] someone called and wrote a two-page letter to the City Manager alleging that Plaintiff had threatened Wanda Hawley, a coworker. *Id.* ¶ 43. In December 2019, Plaintiff approach Hawley and her husband in a Dollar General and asked Hawley if she was the one who had made these allegations. *Id.* Hawley denied being the source of the allegations. *Id.*

On April 12, 2020, Hawley was working at Walmart when Plaintiff approached her again and asked if she was the source of allegations. *Id.* And on or about April 24, Plaintiff went to Hawley's house and asked her to write a note saying Hawley was not the source of the allegations and to have it notarized. *Id.* On May 1, Hawley was at her husband's business when Plaintiff appeared again asking Hawley when the statement would be written and notarized. *Id.*

At this point, Hawley called City Manager Hodges and spoke with him about Plaintiff's repeated appearances and the previous allegations. *Id.* Hawley also decided to make a statement to the police. Plaintiff alleges Hawley only made this statement because City Manager Hodges told her to. *Id.* ¶ 43.

On May 7, Plaintiff received a letter stating that she had been terminated effective May 8, 2020 "due to violations of the City of Childress Personnel Policies and Procedures," including "misconduct, malfeasance, abuse of the public, being discourteous to the public and fellow employees, and unethical conduct." *Id.* ¶ 47.

Plaintiff was born in 1960 and was scheduled to retire on October 30, 2020. *Id.* ¶ 11, 34. As a result of her termination, Plaintiff lost her health insurance benefits and her retirement benefits were less than if she would have retired in October 2020 as planned. *Id.* ¶ 48.

---

[1] Plaintiff's Complaint is not a model of clarity and, regarding these allegations, the Complaint balances on the edge of being *purposively* obscurant.

On June 2, Plaintiff filed a second EEOC charge of discrimination (EEOC Complaint II) against Defendant alleging retaliation and a hostile work environment under Title VII. ECF No. 8-1 at 7. On October 14, the EEOC dismissed EEOC Complaint I based on a failure to establish violations of the statutes and issued Plaintiff a notice of the right to sue regarding EEOC Complaint I. ECF No. 8-1 at 9-11. Plaintiff filed the present lawsuit on January 12, 2021. ECF No. 1 at 1. After Plaintiff filed suit, the EEOC issued Plaintiff a notice of the right to sue regarding EEOC Complaint II on January 26, 2021. ECF No. 8-1 at 14.

LEGAL STANDARDS

A. Rule 12(b)(1)

When a motion to dismiss for lack of subject-matter jurisdiction "is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Furthermore, where a complaint could be dismissed under Rule 12(b)(1) or 12(b)(6), "the court should dismiss only on the jurisdictional ground . . . without reaching the question of failure to state a claim . . . ." *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977). By doing so, courts avoid issuing advisory opinions. *Steel Co.*, 523 U.S. at 101. Additionally, this prevents courts without jurisdiction "from prematurely dismissing a case with prejudice." *Ramming*, 281 F.3d at 161.

B. Rule 12(b)(6)

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

5

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Twombly*, 550 U.S. at 555 (internal marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Constr. Co., Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal marks omitted).

### C. Rule 15(a)

Under the Federal Rules of Civil Procedure Rule 15(a), "a court should freely give leave" for a party to amend its pleadings "when justice so requires" to decide cases on their merits and not on procedural or technical defects. FED. R. CIV. P. 15(a)(2). Courts generally should only do so "to enable a party to assert matters that were overlooked or unknown at the time the party filed the original complaint or if previously unimportant factual issues gain new significance." *Sells v. Corely*, No. 2:20-CV-12-Z, 2020 WL 4035177, *2 (N.D. Tex. July 16, 2020).

ANALYSIS

Plaintiff brings a myriad of claims against Defendant. For ease of analysis, the Court will organize the claims in the following order: first, the Court will address Plaintiff's (1) ADA retaliation and (2) ADEA retaliation claims. Then, the Court will analyze Plaintiff's (3) ADA discrimination claim. Next is Plaintiff's (4) ERISA interference claim. After that is Plaintiff's (5) Texas Whistleblower Act claim. The next section addresses Plaintiff's FMLA (6) retaliation and (7) interference claims. Lastly, the Court addresses Plaintiff's (8) Section 1983 claims.

### A. Plaintiff's (1) ADA and (2) ADEA retaliation claims are unexhausted

An employee who claims to have been subjected to employment discrimination must pursue an administrative process before he can present any claim in court. *Taylor v. Books A Million*, 296 F.3d 376, 378–79 (5th Cir. 2002). This process requires the employee to timely file an administrative complaint with the EEOC and receive notice of the right to sue. *Id.* at 379. The plaintiff's administrative remedies are deemed exhausted upon receipt of the right-to-sue letter and submission of the letter to the court. *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788–89 (5th Cir. 1996).

Plaintiff filed two complaints with the EEOC. ECF No. 8-1 at 2-5, 7. Plaintiff received her right-to-sue letter for EEOC Complaint I *before* filing this action. ECF No. 8-1 at 9-11. She did not receive her right-to-sue letter related to EEOC Complaint II until *after* she filed the present action. ECF No. 8-1 at 14; ECF No. 1 at 1. EEOC Complaint II solely alleged Plaintiff was subjected to a hostile work environment under Title VII. ECF No. 8-1 at 7. There are no discrimination or retaliation allegations related to the ADA or ADEA in EEOC Complaint II. ECF No. 8-1 at 7. Thus, the Court need only examine EEOC Complaint I when deciding these claims.

EEOC Complaint I alleged Defendant discriminated against Plaintiff in violation of the ADA and ADEA and retaliated against her *as a result* of complaints made to her superiors about the misuse of funds, disparate treatment, and her work conditions. ECF No. 8-1 at 2-3; Comp. ¶ 24. Plaintiff avers that her ADA and ADEA retaliation claims "can reasonably be expected to grow out of the charge of discrimination" and that the Fifth Circuit directs courts to construe EEOC complaints broadly. ECF No. 14 at 3 (citing *McClain v. Lufkin Industries, Inc.*, 519 F.3d 264, 273 (5th Cir. 2008)).

7

While a lawsuit can include related allegations to those specifically alleged in a plaintiff's EEOC complaint, "[d]iscrimination and retaliation claims are distinct, and the allegation of one in an EEOC charge does not exhaust a plaintiff's remedies as to the other." *Bouvier v. Northrup Grumman Ship Sys., Inc.*, 350 Fed. App'x 917, 921 (5th Cir. 2009).

EEOC Complaint I does not include an ADA or ADEA retaliation claim. ECF No. 8-1 at 2-3. It only contains a claim of retaliation *under Title VII* which Plaintiff did not include in this suit. Moreover, the narrative in EEOC Complaint I only alleges Defendant *discriminated*, not retaliated, against Plaintiff due to her age and her disabilities. ECF No. 8-1 at 3. Plaintiff's discrimination complaints would not "put the EEOC on notice to investigate retaliation." *Bouvier*, 350 Fed. App'x at 921 (finding plaintiff's retaliation claim was not exhausted when her EEOC complaint only alleged sex discrimination, not retaliation). The Court therefore finds Plaintiff failed to administratively exhaust her ADA and ADEA retaliation claims and **GRANTS** the motion to dismiss Plaintiff's ADA and ADEA Retaliation claims accordingly.[2]

**B. Plaintiff fails to state a claim for (3) ADA Discrimination, but the Court grants leave to amend this specific claim**

Plaintiff's ADA discrimination claim was exhausted, but Defendant alternatively argues for dismissal of the claim because Plaintiff failed to demonstrate that she is a disabled person under the ADA. ECF No. 7 at 27. The Court agrees but grants Plaintiff leave to amend her Complaint.

The ADA prohibits employment discrimination against a qualified individual on the basis of [her] disability. 42 U.S.C. §§ 12102 *et seq*. To discriminate under the ADA means to "not

---

[2] Plaintiff does not argue that these claims are exhausted but merely argues that the *Gupta* exception sometimes allows plaintiffs to proceed on unexhausted claims. *Gupta v. East Texas State Univ.*, 654 F.3d 411, 413–14 (5th Cir. Unit A, 1981). But *Gupta* is not applicable in this case because it does not apply to claims in which both retaliation and discrimination are alleged simultaneously, *and* it does not apply when "the alleged retaliation occurs before the filing of the EEOC charge." *Simmons-Myers v. Caesars Entm't Corp.*, F. App'x 269, 273–74 (5th Cir. 2013); *Eberle v. Gonzales*, 240 F. App'x 622, 628 (5th Cir. 2011). Plaintiff also seeks to amend her Complaint but does not explain how she would cure the deficiencies. Issues of exhaustion cannot be fixed by simple amendment. *See Dao*, 96 F.3d 787 at 789 (affirming the *dismissal* of an ADA claim when it was not administratively exhausted).

8

mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). To prevail on an ADA discrimination claim, a plaintiff must show "(1) [she] has a disability; (2) [she] is qualified for the position in which [she] seeks employment; and (3) [she] was discriminated against because of [her] disability." *Griffin v. United Parcel Service, Inc.*, 661 F.3d 216, 222 (5th Cir. 2011).

As a preliminary matter, "[a] disability is '[a] physical or mental impairment that substantially limits one or more of the major life activities of such individual[.]'" *Id.* (quoting 29 C.F.R. § 1630.2(g)). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, . . . breathing, . . . ." 29 C.F.R. § 1630.2(i)(1)(i). "[T]he operation of a major bodily function" such as "functions of the immune system. . . and . . . brain . . . respiratory, circulatory, cardiovascular . . . functions" are also major life activities. 29 C.F.R. § 1630.2(i)(1)(ii).

Importantly, "the term substantially limits shall be construed broadly in favor of expansive coverage" and is "not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). Although a plaintiff must establish that she has a disability covered under the ADA, the focus of an ADA claim is "not whether an individual's impairment substantially limits a major life activity" rather it is whether the entity complied with its obligations and whether discrimination has occurred. 29 C.F.R. § 1630.2(j)(1)(iii).

Defendant contends that Plaintiff fails to demonstrate she has a disability under the ADA and fails to plead how her alleged disabilities substantially limit major life activities. The Court

agrees but finds that leave to amend her Complaint is appropriate for this claim. Plaintiff's laundry-list of health conditions signal that she will likely be able cure the deficiencies in her Complaint.[3]

Accordingly, the Court **DENIES** the motion to dismiss Plaintiff's ADA Discrimination claim and **GRANTS** Plaintiff's leave to amend her ADA discrimination claim to establish how her alleged disabilities substantially limit a major life activity. Plaintiff should also plead facts showing specifically what accommodations she requested and whether they were denied.

### C. Plaintiff did not administratively exhaust her (4) ERISA interference claim

Defendant moves to dismiss Plaintiff's ERISA interference claim because it was (1) insufficiently pled and (2) not administratively exhausted. The Court finds Plaintiff did not administratively exhaust her ERISA benefits claim, and it must therefore be dismissed.

The Fifth Circuit requires the exhaustion of administrative remedies as a prerequisite to filing a lawsuit under ERISA. *Galvan v. SBC Pension Benefit Plan*, 204 Fed. Appx. 335, 340 (5th Cir. 2006) (affirming the dismissal of a benefits claim under ERISA for lack of exhaustion). "A claim arising under ERISA does not accrue until an administrative claim has been denied." *Id.*

---

[3] Defendant relies on a string cite of Fifth Circuit and this Court's cases to establish that an ADA disability classification is difficult to achieve. ECF No. 7 at 28-29. Defendant's reliance is misplaced. First, the relevant ADA statute, was amended in 2008. ADA Amendments Act of 2008, Pub. L. No. 110–325, 122 Stat. 3553 (2008) (codified as amended in scattered sections of 42 U.S.C.). Prior to the amendment, the statute instructed courts to find an ADA disability existed only when the disability significantly restricted a plaintiff's ability to perform a major life activity. But the amended statute expressly rejects this by stating that "[a]n impairment need *not* prevent, or significantly or severely restrict, the individual from performing a major life activity . . . ." 29 C.F.R. § 1630.2(j)(1)(ii) (emphasis added). Congress did so because the high standard courts were imposing on ADA disability classification was "inconsistent with congressional intent." Pub. L. No. 110–325, 122 Stat. 3553 (codified as amended in scattered sections of 42 U.S.C.). Defendant's reliance on *Hale v. King* is therefore misguided. In fact, the Fifth Circuit in that case explicitly stated that its holding was based on the pre-amended statute, because the amended version did not apply retroactively. *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011). Additionally, all of the cases Defendant cites to for this proposition were decided prior to the 2008 amendment and used the heightened standard to find no ADA disability existed. *See Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 190 (5th Cir. 1996); *see also Bennett v. Calabrian Chemicals Corp.*, 324 F. Supp.2d 815, 826 (E.D. Tex. June 9, 2004); *and see Griffin*, 661 F.3d at 222–23. Importantly, the Court is not holding that Plaintiff has a disability under the ADA; instead, it is holding that dismissal is inappropriate at this point and Plaintiff shall amend her ADA discrimination claim to elucidate whether her impairments are a disability under the ADA. A plaintiff must still prove a disability, it is just easier to do so than what Defendant suggests. *Neely v. PSEG Tex., Ltd. Partnership*, 735 F.3d 242, 245 (5th Cir. 2013) (noting that the ADA amendment makes it easier to prove a disability but does not absolve plaintiffs from proving one).

Plaintiff concedes that Defendant sent her the appropriate COBRA notices but argues she did not receive them or elect coverage. ECF No. 14 at 5. Because Plaintiff does not allege, and the facts do not indicate, that Defendant withheld information regarding her benefits, Plaintiff has no justifiable excuse for her failure to exhaust administrative remedies. *Simmons v. Willcox*, 911 F.2d 1077, 1081 (5th Cir. 1990) (determining that the plaintiff had no excuse for failing to exhaust administrative remedies when the defendant was forthcoming and cooperative). Accordingly, Plaintiff has no cause of action for denial of ERISA benefits, and the Court **GRANTS** the motion to dismiss Plaintiff's ERISA interference claim and **DENIES** Plaintiff's motion for leave to file an amended ERISA interference claim.

### D. Plaintiff's (5) Texas Whistleblower Act claim is untimely

The TWA provides a cause of action for public employees who report a violation of law by the employing government entity or another public employee and are subsequently suspended or terminated. TEX. GOV'T CODE ANN. § 554.002. Defendant moves to dismiss Plaintiff's TWA claim for (1) failure to report to the appropriate entity and (2) untimeliness. The Court finds Plaintiff's TWA claim is untimely and must be dismissed.

A public employee alleging violations of the TWA has ninety days to file a lawsuit. *Id.* § 554.005. The limitations period begins to run on the date that "the alleged violation [. . .] occurred" or the date that the violation "was discovered by the employee through reasonable diligence." *Id.* Defendant terminated Plaintiff on March 8, 2020. Comp. ¶ 47. Plaintiff brought the present suit on January 12, 2021, well after the ninety-day limitations period passed. ECF No. 1 at 1. Plaintiff provides no reason for the delay. Accordingly, Plaintiff's TWA claim must be

dismissed because it cannot plausibly give rise to an entitlement of relief.[4] The Court **GRANTS** the motion to dismiss Plaintiff's TWA claim and **DENIES** the motion for leave to file an amended TWA claim.

### E. Plaintiff's FMLA (6) retaliation and (7) interference claims are facially plausible and cannot be resolved on the pleadings

Defendant moves to dismiss Plaintiff's FMLA retaliation and interference claims because she was not properly on FMLA leave pursuant to FMLA regulations. ECF No. 7 at 33-34. The Court finds her FMLA retaliation and interference claims plausibly state a claim on which relief can be granted. Accordingly, dismissal is improper as to these claims.

As a preliminary matter, the Court must decide what filings to consider for purposes of this motion to dismiss. "Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). Additionally, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). Defendant, invoking the proposition in *Collins*, relies on an attached investigative report concerning Plaintiff's FMLA claim with the Department of Labor — Wage & Hour Division ("DOL"): ECF No. 8-1 at 39-44. ECF No. 7 at 33-34. Defendant argues Plaintiff cannot obtain relief under the FMLA because she was not on FMLA-leave, according to the DOL investigator's report. ECF No. 7 at 34. Specifically, the report found that (1) Defendant timely sent FMLA eligibility documentation to Plaintiff, (2) Plaintiff failed to provide a proper doctor's certification,

---

[4] "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

12

(3) Plaintiff's doctor's certification was clearly falsified, and (4) there were no FMLA violations. ECF No. 7 at 33–34.

But Defendant's reliance is misguided. The conjunctive "and" in *Collins* requires that a document be both central to a plaintiff's claim *and* referenced in her Complaint. *See Ogbogu v. Navin*, No. 3:18-CV-1912-K-BH, 2019 WL 4307011, at *7 (N.D. Tex. Aug. 16, 2019); *see also Reese v. Wells Fargo Bank, N.A.*, No. 3:17-CV-2174-G, 2017 WL 5992406, at *2 (N.D. Tex. Dec. 4, 2017). While this information could be central to the merits of Plaintiff's claim, she did not make any reference to a DOL investigator's report in her Complaint. General allegations in the Complaint concerning the DOL claim are insufficient — the reference must be to the document itself. *See Ogbogu*, 2019 WL 4307011 at *7; *see also Hearn v. Deutsche Bank Nat. Trust Co.*, No. 3:13-CV-2417-B, 2014 WL 4055473, at *4 n.3 (N.D. Tex. Aug. 15, 2014). It is, therefore, improper for the court to consider this document for purposes of the present Rule 12 motion.

"To prove FMLA retaliation, the employee must demonstrate: '(1) he was protected under the FMLA; (2) he suffered an adverse employment action; and (3) he was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because he sought protection under the FMLA.'" *Acker v. General Motors, L.L.C.*, 853 F.3d 784, 790 (5th Cir. 2017) (quoting *Mauder v. Metro. Transit Auth. of Harris Cnty.*, 446 F.3d 574, 583 (5th Cir. 2006)). The third element requires the employee to show "there is a causal link" between the FMLA-protected activity and the adverse action. *Id.* (quoting *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005)).

First, Plaintiff properly pled she was protected under the FMLA. Specifically, Plaintiff established she was eligible for FMLA-leave because she worked for Defendant, an eligible employer, for over twelve months and she suffered from a serious health condition that made her

unable to perform the functions of her position. Comp. ¶ 8, 38, 39. She also gave notice to Defendant of her intention to take leave, and that Defendant led her to believe she would be on FMLA-leave following the Families First Coronavirus Response Act emergency paid sick leave time. *Id.* ¶ 37-39. It is plausible she was on FMLA-leave at the time of her termination.

Second, Plaintiff also properly pled the second and third elements. Plaintiff established that Defendant terminated her, and she therefore suffered an adverse employment action. *Id.* ¶ 47. Plaintiff also sufficiently pled facts indicating she suffered this adverse employment action as a result of seeking FMLA protection. Specifically, Plaintiff pled that she suffered continual hostility and scrutiny by her supervisors for requesting time off for doctor appointments and for requesting accommodations for her impairments leading up to her FMLA-leave request. *Id.* ¶ 25-28. Defendant advised her she would need to take FMLA-leave and while taking FMLA-leave, Defendant terminated her. *Id.* ¶ 38, 47. From these allegations, it is plausible that her termination resulted from engaging in a protected activity under the FMLA.

Turning to Plaintiff's FMLA interference claim, to sustain an FMLA interference claim, "a plaintiff 'must at least show that [the defendant] interfered with, restrained, or denied her exercise or attempt to exercise FMLA rights, and that the violation prejudiced her.'" *Bryant v. Texas Dept. of Aging and Disability Services*, 781 F.3d 764, 770 (5th Cir. 2015). Defendant argues that Plaintiff fails to state a claim for FMLA interference because she was not on FMLA-leave after failing to sign a FMLA eligibility certification. ECF No. 7 at 33. But a plaintiff does not need to be *on* leave to assert an interference claim. In fact, interference can be found by denying or attempting to deny a request for FMLA-leave from an eligible employee. *Bryant*, 781 F.3d at 770. As stated above, Plaintiff established she sought protection under the FMLA and while purportedly

14

taking FMLA-leave, Defendant terminated her. Comp. ¶ 37-39, 47. The FMLA interference claim is facially plausible.

Whether Plaintiff was on FMLA-leave at the time of her termination, and whether she was terminated in retaliation for seeking protection under the FMLA are not appropriate for this Court to resolve at the Rule 12(b)(6) stage. Therefore, the Court **DENIES** the motion to dismiss Plaintiff's FMLA retaliation and FMLA interference claims.

### F. Plaintiff's (8) Section 1983 claim fails to state a claim.

Section 1983 provides a cause of action against any "person" who, under the color of law, deprives another of a constitutional or federal statutory right. 42 U.S.C. § 1983. Municipalities and local governments qualify as "persons" but may be sued under Section 1983 only when a "'deprivation of constitutional rights was inflicted pursuant to official custom or policy.'" *See Bryan v. City of Dallas*, 188 F. Supp.3d 611, 616 (N.D. Tex. 2016) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)). They may not "be sued under [section] 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). "A claim for municipal liability under section 1983 has three elements: (1) a policy maker; (2) an official policy; (3) a violation of constitutional rights whose moving force is the policy or custom." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010).

Plaintiff's Complaint fails to state a claim under Section 1983. According to Plaintiff's conclusory allegations, Defendant maintains an informal custom which deprives employees of their constitutional rights to procedural and substantive due process. Comp. ¶ 81-82. Defendant's failure to adequately train or supervise its employees perpetuates the custom. *Id.* ¶ 82. But the "official policy" alleged by Plaintiff is conclusory and lacks foundation in the pleaded facts.

Accepting all well-pleaded *facts* as true, Plaintiff, at most, alleges individual violations resulting from her interaction with Defendant's employees. *Id.* ¶ 26, 33, 42. The Fifth Circuit rejects extending Section 1983 liability to claims of this nature. *Colle v. Brazos Cnty.*, 981 F.2d 237, 245 (5th Cir. 1993). There is simply no way to infer a policy or recurring pattern from the pleaded facts and Plaintiff fails to indicate how she could derive one.

Plaintiff asks the Court to grant leave to amend her Section 1983 claim. ECF No. 14 at 4. The Court declines to exercise its discretion to grant leave because Plaintiff has not asserted any new facts or contended that previously unimportant issues have gained new significance. *Sells*, 2020 WL 4035177 at *2. Plaintiff's request for leave is as conclusory as the pleaded facts. The Court therefore **DENIES** Plaintiff's motion for leave to amend her Section 1983 claim and **GRANTS** the motion to dismiss Plaintiff's Section 1983 claim.

CONCLUSION

For the reasons stated above, the Court:

1. **GRANTS IN PART** Defendant's Motion and **DISMISSES** Plaintiff's (1) ADA retaliation, (2) ADEA retaliation, (4) ERISA interference, (5) TWA, and (8) Section 1983 claims;

2. **DENIES** Defendant's Motion as to Plaintiff's (3) ADA discrimination claim and **GRANTS** Plaintiff leave to amend in accordance with this opinion; and

3. **DENIES** Defendant's Motion as to Plaintiff's FMLA (6) retaliation and (7) interference claims

**SO ORDERED.**

September 3, 2021.

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE